UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

MICHAEL DEJUAN GROVE,

        Plaintiff,

v.

JOSEPH PERALA et al.,

        Defendants.
_____/

Case No. 2:25-cv-201

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's motion (ECF No. 2) for leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Pynnonen. The Court will also dismiss Plaintiff's retaliation and due process claims against the remaining Defendants Perala, Beck, Loman, Hebert, Mattice, Vanalstine, Kittel, Baumann, and Mukka for failure to state a claim. Plaintiff's Eighth Amendment claims against Defendants Perala, Beck, Loman, Hebert, Mattice, Vanalstine, Kittel, Baumann, and Mukka remain in the case.

**Discussion**

I.   **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. Plaintiff sues Defendants Corrections Officers Joseph Perala, Brian Beck, Jay Loman, Christian Hebert, Brian Mattice, Ray Vanalstine, James Kittel, and Michael Baumann, Sergeant Joshua Mukka, and Lieutenant/Inspector/PREA Coordinator David Pynnonen in their official and personal capacities.

Plaintiff alleges that on November 27, 2024, Corrections Officer Lorendo, who is not named as a Defendant in this case, stopped at Plaintiff's cell and said, "I see you got your contraband TV back." (ECF No. 1, PageID.5.) Plaintiff attempted to show Lorendo proof that it was his property, but Lorendo ignored him and stated that he was taking the TV. Lorendo then opened Plaintiff's cell door and ordered him to step out of the cell. (*Id.*) Plaintiff asked for a sergeant and while they were waiting, Lorendo stated, "I hope I have to come in there and physically remove ya from that cell, either way that TV is gone." (*Id.*)

When Defendant Mukka arrived at the cell, Plaintiff explained that Lorendo was harassing him, but Defendant Mukka ignored Plaintiff and ordered him to step outside his cell. (*Id.*) As Plaintiff was walking out of his cell, he heard Lorendo mumble "That's what I thought ni**er." (*Id.*) Plaintiff then turned and punched Lorendo in the face. (*Id.*) Lorendo and Defendant Mukka tackled Plaintiff and began to beat him. (*Id.*) Corrections Officer Lorendo held Plaintiff in a headlock and punched him in the face while Defendant Mukka was on Plaintiff's back punching him in the ribs. (*Id.*)

2

Plaintiff states that Defendant Perala then arrived and ordered Plaintiff to put his hands behind his back, but when he attempted to do so, someone was holding his arms at his side. Defendant Perala then began to punch Plaintiff and knee him in the ribs. (*Id.*) Defendant Mattice also arrived and told Plaintiff to stop resisting and to place his hands behind his back, even though Plaintiff was not resisting and was not able to move his arms because someone was pinning them to his side. (*Id.*) Defendant Mattice then dropped down on Plaintiff's back with his knee using all of his weight and knocked the wind out of Plaintiff, resulting in Plaintiff's inability to breathe. (*Id.*) Defendant Mattice used his taser to stun Plaintiff multiple times and Plaintiff screamed in agony, yelling that he could not breath and that someone was pinning his arms so that he could not place them behind his back to be cuffed. (*Id.*)

Plaintiff was finally handcuffed and placed in an emergency restraint chair. (*Id.*) While in the chair, Defendant Kittel began to poke Plaintiff in the eye with his finger. (*Id.*, PageID.6.) Plaintiff pulled away and noticed Defendant Loman enter his cell. Plaintiff then heard his TV and tablet being smashed and stomped on the floor of his cell "in retaliation." (*Id.*)

Plaintiff was taken to segregation unit 2 and placed in the A-wing shower for a strip search. Once naked, a Corrections Officer ordered Plaintiff to bend at the waist and spread his butt cheeks, which was unusual because the normal protocol is to "squat, spread your cheeks, and cough," so that is what Plaintiff did. (*Id.*) Because Plaintiff did not do exactly as instructed, the Corrections Officer stated that he had failed to comply with the search and called for an Emergency Response Team (ERT). (*Id.*)

Plaintiff waited in the shower for thirty to forty-five minutes until Defendants Loman, Beck, Hebert, Mattice, and Vanalstine arrived in riot gear. (*Id.*) Defendant Bauman was also present with a handheld camera and recorded the incident. (*Id.*) Defendant Mukka stood next to

3

Defendant Loman who was blocking the camera and Defendant Loman ordered Plaintiff to bend at the waist and spread his butt cheeks. (*Id.*) Plaintiff replied that he "had never seen [his] own a**hole" and that Defendant Loman would not see it either. (*Id.*) Plaintiff then squatted, coughed and spread his buttocks. Defendant Mukka then told Plaintiff that he had authorization from the Warden to use a chemical agent if Plaintiff failed to comply, and Defendant Loman again ordered Plaintiff to bend at the waist and spread his "butt cheeks." (*Id.*) Plaintiff states that at this point he complied with the order, but that Defendant Loman yelled over his shoulder to the camera that Plaintiff was not complying. (*Id.*) Defendant Loman repeated the order to Plaintiff, who complied, but as soon as Plaintiff spread his buttocks, Defendant Mukka sprayed a chemical agent on Plaintiff's anus and genitalia. (*Id.*, PageID.6–7.) When Plaintiff turned to ask why Defendant Mukka had sprayed him, Defendant Mukka sprayed Plaintiff in the face, causing him to fall to the floor coughing and Defendant Mukka sprayed him again. (*Id.*, PageID.7.)

Defendant Mukka then told Plaintiff to stand up and as Plaintiff got to his feet, Defendant Loman knocked him back down to the floor with his riot shield, causing Plaintiff's head to hit the back wall of the shower. (*Id.*) Defendant Loman then began to stomp on Plaintiff's head and face. (*Id.*) One of the other Corrections Officers grabbed Plaintiff's leg and dragged him to the middle of the floor where "they all beat [him] in retaliation, while saying 'I bet you won't assault another officer.'" (*Id.*) Plaintiff also alleges that one of them grabbed his penis and testicles and pulled hard. Plaintiff was then flipped over onto his stomach and cuffed while Defendant Loman continued to "stomp" on Plaintiff. (*Id.*) Defendant Beck then stuck something in Plaintiff's butt and asked him how he liked that. (*Id.*) Plaintiff knew it was Defendant Beck because he recognized his voice. (*Id.*) Plaintiff states that another Corrections Officer placed shackles on his ankles and then "stomped on the shackles" in an attempt to break Plaintiff's ankles. (*Id.*) Plaintiff was then

4

placed in an Emergency Restraint Chair and taken to healthcare before being thrown into cell 117 on A-wing. (*Id.*) The entire incident was caught on Defendant Mukka's bodycam but when Plaintiff requested it for his misconduct hearing, he was told that the footage was unavailable. (*Id.*) Plaintiff also asserts that the incident was filmed by Defendant Bauman's handheld camera. (*Id.*)

Plaintiff states that following the incident, he was not allowed to take a shower or to wash the chemical agent off for five days. (*Id.*, PageID.8.) Plaintiff suffered severe skin irritation on his buttocks and penis, a deep gash on the back of his head, a gash above his right eye, two black eyes, a broken nose, broken blood vessels in his eyes, and bleeding in his mouth for three days. (*Id.*) Plaintiff also had extremely swollen ankles and could hardly stand for three days. (*Id.*) Plaintiff asserts that he continues to suffer from migraines, neck pain, and anxiety. (*Id.*) Plaintiff submitted numerous kites to healthcare but was not called out for a month. (*Id.*)

Plaintiff states that he filed numerous grievances and a PREA complaint, but that Defendant Pynnonen failed to investigate or to protect Plaintiff from further retaliation. (*Id.*) Plaintiff requested an immediate transfer because his food was being tampered with, and he was not receiving adequate healthcare but was forced to remain at AMF until July 9, 2025. (*Id.*)

Plaintiff seeks damages and that Defendants be fired from their jobs.

## II.     Motion to appoint counsel

Plaintiff has filed a motion (ECF No. 3) seeking the appointment of counsel in this case. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 3) will therefore be denied.

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     **Defendant Pynnonen**

Plaintiff's only allegations against Defendant Pynnonen are that he failed to investigate Plaintiff's grievances or to protect Plaintiff from further unspecified retaliation following the November 27, 2024, incident. (ECF No. 1, PageID.8.) Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Pynnonen encouraged or condoned the conduct of his subordinates, or authorized, approved or knowingly acquiesced in the conduct. Plaintiff's only allegations against Defendant Pynnonen involve the denial of grievances and the failure to investigate. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Pynnonen was personally involved in the alleged mistreatment by the other named Defendants. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff fails to state a § 1983 claim against Defendants Pynnonen.

### B. Retaliation

Plaintiff makes a conclusory assertion that the excessive force he was subjected to and the destruction of his TV and tablet were motivated by a desire to retaliate against him for assaulting an officer. (ECF No. 1, PageID.6–7.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must

8

establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff fails to allege that he was engaged in protected conduct. Assaulting a prison officer clearly is not protected conduct. *See Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) (summarizing Supreme Court cases holding that, although "an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea[,"] "a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." (internal citations and quotations omitted)); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984) ("[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled to no constitutional protection."); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence."). Therefore, Plaintiff's retaliation claim is properly dismissed.

    **C.**    *Parratt* **doctrine**

Plaintiff claims that Defendant Loman destroyed his TV and tablet by throwing them on the floor and stomping on them while Defendant Kittel was present. (ECF No. 1, PageID.6.) Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-

deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim for the loss of his property will be dismissed.

### D.    **Eighth Amendment**

To the extent that Plaintiff is claiming that Defendants Perala, Beck, Loman, Hebert, Mattice, Vanalstine, Kittel, Baumann, and Mukka violated his Eighth Amendment rights by subjecting him to excessive force and/or failing to protect him from such force, the Court concludes that at this point in the litigation, Plaintiff has alleged sufficient facts to support those claims.

### Conclusion

The Court will grant Plaintiff's motion (ECF No. 2) for leave to proceed *in forma pauperis* and deny (ECF No. 3) his motion for the appointment of counsel. Having conducted the review

required by the PLRA, the Court determines that Defendant Pynnonen will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's retaliation and due process claims against the remaining Defendants: Perala, Beck, Loman, Hebert, Mattice, Vanalstine, Kittel, Baumann, and Mukka. Plaintiff's Eighth Amendment claims against Defendants Perala, Beck, Loman, Hebert, Mattice, Vanalstine, Kittel, Baumann, and Mukka remain in the case.

      An order consistent with this opinion will be entered.


Dated:   September 10, 2025              /s/ Paul L. Maloney
                                                                       Paul L. Maloney
                                                                       United States District Judge