UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL DEJUAN GROVE #779585,

            Plaintiff,

    v.

JOSEPH PERALA, et al.,

            Defendants.

_____/

Case No. 2:25-cv-00201

Hon.  Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R. & R.) addresses Defendants Perala, Kittel, and Mukka's motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies.  ECF No. 21.  Additionally, the R. & R. addresses the notice of Suggestion of Death of Defendant Mattice.  ECF No. 16.

State prisoner Michael Grove filed a complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights by subjecting him to excessive force and sexual assault.  ECF No. 1.  The remaining Eighth Amendment claims are against employees of the Michigan Department of Corrections. Defendants include: Corrections Officer (CO) Perala, CO Beck, CO Loman, CO Herbert, CO Mattice, CO VanAlstine, CO Kettel, CO Baumann, and Sergeant (Sgt.) Mukka.  ECF No. 6.

First, Defendants CO Perala, CO Kittel, and Sgt. Mukka argue that Plaintiff failed to exhaust his administrative remedies against them.  Second, Defendants filed

a suggestion of death notifying the Court and remaining parties that CO Mattice is deceased.  It is respectfully recommended that this Court dismiss Defendant Mattice, pursuant to Rule 25(a)(1), and grant Defendant's motion in part by dismissing Defendants Perala and Kittel from this lawsuit without prejudice.   It is further recommended that the Court deny Defendants' motion in part by finding that Defendant Mukka  should not be dismissed because a genuine issue of material fact exists on the issue of exhaustion.

## II.  Defendant Mattice

On January 20, 2026, Defendants filed a notice of Suggestion of Death as to Defendant Mattice under Fed. R. Civ. P. 25(a)(1).  No motion for substitution has been filed by any party within the time required by law.  Accordingly, it is recommended that Defendant Mattice be dismissed from this lawsuit, pursuant to Rule 25(a)(1).

## III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one

---

1    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).  However, when the exhaustion issue is intertwined with the merits of a claim,

2

party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV.  Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove.  *Jones v. Bock*, 549 U.S. 199, 212-16 (2007).  "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

---

the Seventh Amendment requires a jury trial on the exhaustion issue.  *Richards v. Perttu*, 605 U.S. 460, 479, 145 S.Ct. 1793, 1807 (2025).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement

"afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, \*5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective September 25, 2023) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ W. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted informal resolution. *Id.* at ¶ W, CC. The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent. *Id.* at ¶ CC. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what,

when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ Y (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶ JJ.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ LL.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶ NN.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ OO.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and

therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

A prisoner asserting sexual abuse by a prison staff member may report the allegations verbally or in writing in any manner. MDOC Policy Directive 03.03.140 at ¶ UU. A prisoner may use the prison grievance system to report sexual abuse and the grievance shall be forwarded to the PREA Coordinator for further handling. *Id*. at ¶ VV. If a grievance contains both PREA and non-PREA claims, the PREA claims are transferred to the PREA Coordinator and the prisoner must refile the non-PREA claims under the grievance policy. MDOC Policy Directive 03.02.130 at ¶ D and MDOC Policy Directive 03.03.140 at ¶ VV.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation

process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325.    We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).

### V.  Analysis

First, Plaintiff Grove concedes that he did not exhaust administrative remedies against Defendants CO Perala or CO Kittel.  ECF No. 25, PageID.148.  In the opinion of the undersigned, Defendants Perala and Kittel should be dismissed from this action.

Therefore, the only remaining controversy is whether Plaintiff exhausted his claims against Defendant Mukka.  Sgt. Mukka argues that since the PREA investigation did not involve conduct by him, Plaintiff could not have exhausted his administrative remedies.  ECF No. 22, PageID.94.  Grove argues that he exhausted his claims against Sgt. Mukka by including them in the Step I grievance forwarded to the PREA Coordinator for investigation and that he cannot control how the claim is investigated.    Defendants have attached the affidavit of MDOC Litigation Specialist  Raquepaw, who attests that Sgt. Mukka was not investigated for sexual abuse:

8

5.    AIM #51664 arose out of a Step I grievance form submitted by Grove on or around December 2, 2024, alleging he was sexually assaulted during a November 27, 2024, strip search.  The only individuals investigated under AIM #51664 were COs Brian Beck, Jay Loman, Christian Hebert, Brian Mattice, Ray VanAlstine, and Michael Baumann.  The AIM #51664 investigation concluded with a finding of insufficient evidence that the six COs engaged in any sexual conduct with Grove.

6.    Due to the sensitive nature of the PREA investigations, the AIM investigation report cannot be provided to the prisoner and cannot be made a part of the public record.

ECF No. 22-5, PageID.132.

Grove has submitted a copy of his Step I grievance that he submitted that was assigned AIM 51664:

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. *On the above date at about 8:20a. I was placed in Unit 2 shower on A-wing for a strip search. I complied with the search, but once I was made to remain stated I refused to let him see my butt hole. I had already squatted and spreaded my butt cheeks, so I didn't know what else he wanted me to do. I was left in the shower naked for 30-45 mins, until the move team arrived. Once the move team arrived, I was ordered to bend at the waist, and spread my butt cheeks, which I did, and was told I wasn't complying. I was then ordered to bend at the waist and bead my butt cheeks again, which I did, but this time Sgt. Mokka sprayed a chemical agent in my neck, butt, and penis. I have a history of respiratory issues, so I began coughing and couldn't breathe, and then I turned around he sprayed me again in my face and chest. The move team then came into the shower, and began to punch, and kick me in my head and face. They then flipped me on my stomach, and one of them stuck something in my butt, and told me he was enjoying this, and that I was the last Nigger they was gone beat before the body cameras came into effect. I have a black eye, a cut above my eye, knots on my head, and bruises all over my back.*

*I want to request that a A-wing camera footage between 8:15-9:30am as evidence of this incident.*

Michael O. Grove
Grievant's Signature

RESPONSE (Grievant Interviewed?   ☐ Yes   ☐ No    If No, give explanation.  If resolved, explain resolution.)

AIM  51664
Due 2/4/25

ECF No. 25-1, PageID.160.

Plaintiff asserts that this Step I grievance was transferred to the PREA Coordinator.  It appears that the grievance raised Plaintiff's sexual abuse claims against Defendant Sgt. Mukka.  Defendants have not provided any further reply to Plaintiff's assertion that this grievance was submitted and forwarded to the PREA Coordinator.  Accordingly, in the opinion of the undersigned a genuine issue of material facts regarding whether Plaintiff exhausted his administrative remedies against Sgt. Mukka.

### V.  Recommendation

Therefore, the undersigned respectfully recommends that this Court dismiss Defendant Mattice, pursuant to Rule 25(a)(1), and grant Defendant's motion in part by dismissing Defendants  Perala and Kittel from this lawsuit without prejudice.  It is further recommended that the Court deny Defendants' motion in part by finding that Defendant Mukka should not be dismissed because a genuine issue of material fact exists on the issue of exhaustion.

If the Court adopts this recommendation, the remaining Eighth Amendment claims will be against Defendants Mukka, Beck, Loman, Hebert, Vanalstine, and Baumann.

Dated:  April 24, 2026                    /s/ *Maarten Vermaat*
                                          MAARTEN VERMAAT
                                          U. S. MAGISTRATE JUDGE

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections

constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).